IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Leroy Kelley, # 114732, ) | |
| ) | |
| ) | Civil Action No. 6:15-3583-TLW-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Investigator Coxe, McCor. Corr. Inst.; ) | |
| Warden Leroy Cartledge, McCor. Corr. ) | |
| Inst.; ) | |
| Ass. Warden Scott Lewis, McCor. Corr. ) | |
| Inst.; ) | |
| Major Frank Murster, McCor. Corr. ) | |
| Inst., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"). The SCDC website (http://public.doc.state.sc.us/scdc-public/, last visited on Sept. 9, 2015) indicates that the plaintiff is serving a life sentence for murder and a twenty-year sentence for assault and battery with intent to kill ("ABWIK"). The plaintiff's convictions were entered in the Court of General Sessions for Laurens County in 1983.

In the above-captioned case, the plaintiff has brought a civil rights action against the Warden, the Associate Warden, a Major, and an Investigator with respect to the plaintiff's placement in lock-up while another inmate's allegation of a sexual assault was investigated. The plaintiff filed a grievance (No. MCCI No. 0648-14) on December 12, 2014. The plaintiff's exhibits reveal that the grievance was initially denied on December 18, 2014 (doc. 1-1 at 1–2). The plaintiff filed a step 2 appeal on December 18, 2014. The

plaintiff was released from restrictive housing ("lock-up") on April 24, 2015, and placed back into the general population (doc. 1-1 at 3). Hence, in the step 2 decision issued on July 22, 2015, the Warden stated that he "considered this matter resolved" (*id*.).

In the complaint, the plaintiff alleges that on September 2, 2014, he was taken to the SMU after another inmate made allegations of rape. The plaintiff states that he was unaware of the allegations and found out about them "by word of mouth." On September 3, 2014, the plaintiff sent a Request to Staff form to Investigator Coxe to inform him that the allegations were not true, noted that the SCDC already had his DNA samples, and requested that Investigator Coxe speak with him. According to the plaintiff, Investigator Coxe did not respond or speak to the plaintiff (doc. 1 at 3). On September 4, 2014, the plaintiff states that he sent a letter to Warden Cartledge, requesting that the Warden review video recordings of his housing unit, which would show that the inmate making the allegations was not in the plaintiff's cell. The plaintiff claims he did not receive a response from Warden Cartledge (*id*.).

On October 5, 2014, the plaintiff sent a letter to Major Mursier requesting he be released from lock-up because the 30 day period for an investigation "was up." Major Mursier responded that "[t]hey were waiting on the final investigation Report from S.L.E.D." (*id*.). On October 20, 2014, the plaintiff states he spoke with Associate Warden Lewis in the presence of Major Mursier. Associate Warden Lewis told the plaintiff that he would "[c]all Investigator Coxe to find out what was going on in [the plaintiff's] case" (*id*.)

On January 5, 2015, the plaintiff sent a Request to Staff form to D. Hagan, Assistant Chief of Investigations for the SCDC (*id*.). On February 11, 2015, Investigator Cox came to the McCormick Correctional Institution to collect DNA samples from the plaintiff (*id*.). The plaintiff contends that his complaint is brought against Investigator Coxe because Coxe knew about the allegations and had ample time to come and "do a D.N.A. test" on the plaintiff (*id*. at 3–4). The plaintiff further claims that Investigator Coxe already

had access to the plaintiff's DNA "for 10 or 15 years, maybe more" (*id*. at 4).  The plaintiff states that Warden Cartledge is a defendant because the plaintiff wrote him several times for help, but he was ignored.  The plaintiff claims that Major Mursier lied to him about SLED's investigation of his case and his contacting Investigator Coxe (*id*.).  He claims that all four defendants were in a position to ensure that the his DNA samples were sent to SLED at least seven days after he was placed in lock-up.  The plaintiff states that the defendants purposely delayed the investigation to ensure that the plaintiff "did an amount of lock-up time, that was significant to the average prisoner, without providing [the plaintiff] with any type of hearing to defend [him]self against the accusations."  He further claims "even if it was an accident and unintentionally, their mistake was still deliberately indifferent to [the plaintiff's] right to be free from unjustified punishment" without giving the plaintiff notice and a hearing where he could defend himself.  Finally, the plaintiff alleges that all of the defendants were "adequately notified at the earliest time to circumvent unjustified disciplinary detention time" (*id*.).

In his prayer for relief, the plaintiff seeks from each defendant $375,000 for violation of the his Fourth Amendment rights, $375,000 for violation of his Eighth Amendment rights, $375,000 for violation of Fourteenth Amendment rights, $300,000 for false imprisonment, $300,000 for malicious prosecution, and $500,000 in punitive damages "due to the vindictiveness of their deliberate indifference" (*id*. at 5).  The plaintiff also requests that a memorandum be posted in each housing unit "publicly apologizing and exonerating [the plaintiff] of the accusatory treatment" (*id*.).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint and attachments pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act.  The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*).  When a federal court is evaluating a *pro*

*se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Even under this less stringent standard, the complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

The plaintiff's placement in lock-up is not actionable. The plaintiff's exhibits reveal that the plaintiff was placed "on Pre-Hearing Detention in the Restricted Housing Unit (RHU) on September 2, 2014, to maintain the integrity of an investigation" (doc. 1-1 at 3). The act of placing a detainee or prisoner in administrative segregation or higher custody is not punitive *per se* because it is rationally connected to legitimate governmental objectives. Courts have recognized that administrative separation or segregation may, for example, serve any number of the following legitimate interests—to protect an inmate's safety, to protect other inmates from a particular inmate, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer. *Merriweather*, 586 F. Supp. 2d at 557–58; *see also McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); *cf. Keeler v. Pea*, 782 F. Supp. 42, 43–44 (D.S.C. 1992) (South Carolina law confers no protected liberty interest upon inmates of the SCDC being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison).

Moreover, the plaintiff's placement in lock-up for more than seven months did not increase the duration of the plaintiff's confinement on his life sentence for murder. *See O'Bar v. Pinion*, 953 F.2d 74, 83 (4th Cir. 1991) ("Changes in prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges are matters contemplated within the scope of his original sentence to prison."); and *Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978) ("a

prisoner may be transferred to another institution for administrative (*Meachum*, *Cooper*) or disciplinary (*Montanye*) reasons without a hearing, absent a state statute giving such prisoner a reasonable expectation that he will remain where he is confined").

Based on the foregoing, it is recommended that the district court summarily dismiss the above-captioned case *without prejudice* and without service of process. The plaintiff's attention is directed to the Notice on the next page.

September 11, 2015                                          s/ Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge

5

**Notice of Right to File Objections to Report and Recommendation**

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).